# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA


TERESA D. GRAVES )
               )
    Plaintiff, )
               )
    v. )             CAUSE NO.: 3:10-CV-315-TLS
               )
ST. JOSEPH COUNTY )
HEALTH DEPARTMENT, )
               )
    Defendant. )

## OPINION AND ORDER

Presently before the Court are the Defendant's Motion for Summary Judgment [ECF No. 37] and the Defendant's Motions to Strike [ECF Nos. 46 & 50]. The Defendant seeks summary judgment on all counts and requests the Court to strike sections of the Plaintiff's Affidavit [ECF No. 45-2]  and the Plaintiff's Response in Opposition to Defendant's Motion to Strike [ECF No. 49]. This Opinion and Order addresses all outstanding motions relating to the Amended Complaint.


## BACKGROUND AND STATEMENT OF FACTS[1]

This case arose out of the failure to hire and subsequent termination of the Plaintiff, Teresa Graves, by the Defendant, St. Joseph County Health Department.  The Plaintiff, an African-American female, began her employment at the St. Joseph County Health Department on April 16, 2007. On October 16, 2007, the Plaintiff began work in her position as the Health Specialist Lead Outreach Coordinator (Lead Outreach Coordinator) for the St. Joseph County Health Department Lead Program. As a Lead Outreach Coordinator, the Plaintiff was responsible for educating the general public on the prevention of lead poisoning; conducting and

---

[1]The Court provides a general background of the facts here. More specific and detailed facts are set forth in the discussion section of the opinion where relevant.

participating in training events and public information sessions; and providing testing for blood poisoning at day care facilities and schools. The Lead Outreach Coordinator position was funded by a grant from the Department of Housing and Urban Development (HUD) through the South Bend Housing Authority. The Defendant operated as a subcontractor for the South Bend Housing Authority. During the course of her employment with the Defendant from April 16, 2007, through October 30, 2009, the Plaintiff was supervised by Marc Nelson in his position as the Environmental Health Director for the Defendant.

In October 2008, the Defendant began accepting applications for the position of Environmental Health Specialist Lead Program (Lead Staff Member). The Plaintiff submitted an application for this position. Megan Wright, a female Caucasian and employee of the Defendant, also applied for the position. Nelson was responsible for evaluating the applicants and recommending the best qualified candidate for the position. Based on his evaluation, Nelson concluded that Wright was a better candidate for the job than the Plaintiff and recommended her to the St. Joseph County Health Department Health Officer and Health Department Administrator. Wright was subsequently hired for the position of Lead Staff Member.

On October 29, 2008, the Plaintiff filed a grievance with the Defendant, alleging that Nelson had subjected her to discrimination on the basis of her race and age in recommending Wright be hired instead of the Plaintiff. On November 25, 2008, the Defendant's Personnel Committee conducted a hearing regarding that grievance. After hearing the testimony of the Plaintiff, Nelson, and other employees of the Defendant, and considering the evidence submitted by both parties, the Personnel Committee found that the Plaintiff was not discriminated against on account of her age or race and recommended that the Plaintiff's grievance be denied. Following the Personnel Committee's decision, the Plaintiff requested a hearing before the St. Joseph County Commissioner, Dave Thomas. After consideration of testimony and evidentiary

submissions, Thomas denied the Plaintiff's grievance.

In September 2009, the Defendant informed the Plaintiff that her employment with the Defendant would terminate if the Defendant was unable to obtain a renewal or extension of the HUD grant that funded her position. On September 8, 2009, the Plaintiff completed a complaint to the EEOC, alleging discrimination based on age, race, and retaliation.[2] The Plaintiff further made reference to a hostile work environment and daily work place harassment in her Complaint. On October 30, 2009, the Defendant officially terminated the Plaintiff's employment. At the conclusion of its investigation, on May 12, 2010, the EEOC issued a written Dismissal and Notice of Rights to Plaintiff, finding that the evidence obtained did not support the Plaintiff's Complaint.

The Plaintiff, proceeding *pro se*, filed the instant case on August 6, 2010. Her Complaint stated claims against the Defendant for violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. (Compl., ECF No. 1.) The Plaintiff asserted that she had been subjected to discrimination on the basis of her age and race, a hostile work place environment, and retaliation. The Plaintiff sought compensatory damages for lost income. The Plaintiff filed an Amended Complaint on February 25, 2011, adding a claim of sexual harassment. (Pl.'s Am. Compl., ECF No. 24.)

On October 24, 2011, the Defendant filed its Motion for Summary Judgment [ECF No. 37], along with a Memorandum in Support [ECF No. 38] and an Appendix of Exhibits [ECF No. 39]. On October 24, the Defendant also sent the Plaintiff a required Notice [ECF No. 40] explaining Federal Rule of Civil Procedure 56 and Local Rule 56-1. The Plaintiff filed a Response in Opposition [ECF No. 41] and Memorandum in Support [ECF No. 41-1] on

_____

[2]The Plaintiff did not check the box for "Retaliation" on her EEOC Complaint. (Pl.'s Compl. 6, ECF No. 1.) However, she did reference retaliation in the section of the Complaint elaborating on the particulars of her treatment by Defendant. (*Id.*)

November 29. On January 31, 2012, this Court entered an Order [ECF No. 44] allowing the Plaintiff to amend her Response in Opposition and incorporate evidence gathered through discovery.

The Plaintiff filed her Amended Response [ECF No. 45] on March 16, 2012, along with an Amended Memorandum in Support [ECF No. 45-1], an Affidavit [ECF No. 45-2], and an Appendix of Exhibits [ECF No. 45-3]. On March 29, the Defendant filed a Motion to Strike [ECF No. 46] which challenged the admissibility of portions of the Plaintiff's Affidavit, along with a Memorandum in Support [ECF No. 47]. Also on March 29, the Defendant filed a Reply [ECF No. 48] with respect to the Plaintiff's Amended Response. On April 19, the Plaintiff filed a Response to Defendant's Motion to Strike [ECF No. 49] and a Memorandum in Support [ECF No. 49-3]. Shortly thereafter, on April 30, the Defendant filed another Motion to Strike [ECF No. 50], requesting that this Court strike the Plaintiff's Response to Defendant's Motion to Strike and Plaintiff's Memorandum in Support as untimely filed. Further, the Defendant requested that the Plaintiff's reference exhibits be stricken because they had not been authenticated, constituted hearsay, and were not relevant. The Defendant also filed a Memorandum in Support [ECF No. 51] and a Reply [ECF No. 52] with respect to the Plaintiff's Response to Defendant's Motion to Strike.

This Opinion and Order addresses all motions relating to the Plaintiff's Amended Complaint.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law. Fed. R. Civ. P. 56. The motion should be granted so long as no

rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the

evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead

to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe*

*v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The party seeking summary

judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the

movant must provide a "Statement of Material Facts" that identifies the facts that the moving

party contends are not genuinely disputed). In response, the nonmoving party cannot rest on bare

pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material

facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip*

*Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b) (directing that a  response

in opposition to a motion for summary judgment must include "a section labeled 'Statement of

Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed

so as to make a trial necessary"). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations, stipulations
> (including those made for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c)(4), any affidavit or declaration "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must disregard parts of an affidavit that fail to comply with this rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply with the rule and should be disregarded: "(1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture." *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits without

factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted).

## ANALYSIS

### A.     Sexual Harassment Claim

In her Amended Complaint, the Plaintiff contends that she was sexually harassed during her employment with the Defendant. According to the Plaintiff, the Defendant failed to prevent the sexual misconduct of its employees, who "condoned, encouraged, participated, and acquiesced" to the sexual harassment of the Plaintiff. (Pl.'s Am. Compl. 1.) The Defendant argues that the sexual harassment claim is not properly before the Court because the Plaintiff failed to raise the issue of sexual harassment or discrimination in her Complaint to the EEOC. Citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985), the Defendant emphasizes that a plaintiff must first raise a claim of discrimination with the EEOC prior to seeking judicial relief.

The Court agrees with the Defendant. "Generally, a plaintiff may not bring claims under Title VII that were not originally included in the charges made to the EEOC." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). But if certain claims are not included in an EEOC charge, a plaintiff can still raise them in federal court if they are "like or reasonably related to the

allegations of the [EEOC] charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins.*, *Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc). To be "like or reasonably related," the relevant claim and the EEOC charge "must, at minimum, describe the same conduct and implicate the same individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). As the Seventh Circuit explained by way of example:

> Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination. The claims are not alike or reasonably related unless there is a factual relationship between them.

*Id.*

The Plaintiff makes no argument that her claim of sexual harassment meets the exception to the general requirement that a claim under Title VII must have been presented in the complaint made to the EEOC. Here, the Plaintiff's EEOC Complaint claimed discrimination on the basis of her race and age. (Compl. 6.) In discussing the particulars of her allegations, the Plaintiff emphasized her age and race, the race of her supervisor, and the race of the employee hired for the position of Lead Staff Member. (*Id.*) She claimed that following her decision to file a formal complaint with the Defendant after it did not hire her for the position of Lead Staff Member, she was subjected to "workplace harassment, " "constant scrutiny," "unwarranted reprimands," and a "hostile work environment" on a daily basis. (*Id.*) The Plaintiff's EEOC Complaint made no mention of sexual harassment or any conduct that could be reasonably understood to constitute sexual harassment. Consequently, the Plaintiff's claim of sexual harassment is not properly before the Court, and the Court will dismiss it.

The dismissal, however, is without prejudice. The Seventh Circuit has explained that "the proper remedy for a failure to exhaust administrative remedies is to dismiss the suit without prejudice, thereby leaving the plaintiff free to refile his suit when and if he exhausts all of his administrative remedies or drops the unexhausted claims." *Greene v. Meese*, 875 F.2d 639, 643 (7th Cir. 1989); *see also Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). This principle applies to dismissals for failure to exhaust employment claims before the EEOC. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009); *Hill v. Potter*, 352 F.3d 1142, 1145–46 (7th Cir. 2003). Accordingly, the Court will dismiss the Plaintiff's claim of sexual harassment without prejudice.

**B.      Racial Discrimination**

The Plaintiff alleges that the Defendant racially discriminated against her in its decision not to hire her for the position of Lead Staff Member and in its decision to terminate her position of employment.

**1.      *Failure to Hire***

a.      *Facts Relevant to Failure to Hire Claim*

The Defendant challenges the Plaintiff's claim of race discrimination in hiring, arguing first that the Plaintiff has presented no direct evidence demonstrating that the Defendant's decision to hire Wright instead of the Plaintiff was based on racial animus; second, that the Plaintiff has not produced any circumstantial evidence that would point directly to the hiring decision being a product of racial discrimination; and third, that the Plaintiff is not able to establish a prima facie case of discrimination under the indirect method of proof. (Def.'s Mem. in Supp. of Summ. J. 9–11.)

In support of its position, the Defendant submits an Appendix of Exhibits, which includes the Plaintiff's Complaint, the Plaintiff's Amended Complaint, the Plaintiff's Response to Request for Production of Documents, an Affidavit of Marc Nelson, and an Affidavit of Nick Molchan. (App. of Exs., ECF No. 39.) Nelson's Affidavit details the hiring process for the position of Lead Staff Member. (M. Nelson Aff., ECF No. 39-4.) According to Nelson, he modified the required criteria for the position of Lead Staff Member so that the Plaintiff could apply for the position. (*Id.* ¶ 10.) Specifically, Nelson eliminated the requirement that a candidate for the position of Lead Staff Member have a scientific degree. (*Id.* ¶ 11.) After the Plaintiff submitted her application, Nelson then conducted an evaluation of the two candidates to determine who was best qualified for the position of Lead Staff Member. Nelson evaluated the candidates on their abilities in 19 key areas. (*Id.* ¶ 13.) Wright scored 45 points and the Plaintiff scored 39 points on their respective evaluations. (*Id.* ¶ 14.) Following this evaluation, Nelson and Linda Mauller, the Environmental Health Assistant Director, interviewed the two candidates. Nelson states that Wright "demonstrated a greater understanding of the Environmental Health Lead Program" than the Plaintiff (*id.* ¶ 16) and that Mauller recommended that Wright be selected as the Lead Staff Member (M. Nelson Aff. ¶ 18.).

Next, Nelson discusses the candidates' work history and experience. Nelson notes that the Plaintiff had been employed longer than Wright, but that the Plaintiff had worked almost exclusively in county outreach services; in comparison, Wright had a scientific degree and a "much broader lead program experience" than the Plaintiff. (*Id.* ¶¶ 19–20.) Further, Nelson reports that the Plaintiff demonstrated inappropriate workplace behavior by being late to work frequently, talking too much, talking too loudly, and disrupting other health department

employees at work. (*Id.* ¶ 21.) According to Nelson, in one instance, the Plaintiff "exceeded the scope of her authority" and canceled a health department outreach event. (*Id.*) Nelson also states that the Plaintif's behavior often led to conflict with co-workers at the health department, which required him to issue written reprimands to the Plaintiff. (*Id.* ¶ 22.) In conclusion, Nelson emphasizes that he did not take the Plaintiff's race and age into consideration in the hiring decision and that he recommended Wright for the position of Lead Staff Member because he believed she was the "better candidate." (*Id.* ¶¶ 23–24.)

The Plaintiff responds to the Defendants' contentions by arguing generally that she has presented sufficient evidence to survive summary judgment on the claim of racial discrimination as part of the Defendant's hiring practices.[3] (Pl.'s Am. Mem. in Supp., ECF No. 45-1.) In support of her position, the Plaintiff relies on her own affidavit (T. Graves Aff., ECF No. 45-2) and an extensive collection of exhibits. (Pl.'s Exs., ECF Nos. 45-3 to 45-10.) The Plaintiff contends that the criteria for the Lead Staff Member were never modified to allow her to apply and that she did not have any reprimands in her personnel file at the time she was being considered for the position of Lead Staff Member. (T. Graves Aff. ¶ 9.). The Plaintiff further states that she "was personally told" the 19 key areas considered as part of the hiring process were "subjective and unauthorized" and that they were used to evaluate another female, African-American co-worker, who was also denied promotion. (*Id.* ¶ 12.) According to the Plaintiff, Nelson has only promoted one African-American female during his employment with the Defendant. (*Id.* ¶ 21.) The Plaintiff emphasizes that, during her employment with the Defendant,

---

[3] It is unclear whether the Plaintiff's argument is based on the direct or indirect method of proof. The Plaintiff does generally reference the standard for circumstantial evidence as a method of direct proof. (Pl.'s Am. Mem. in Supp. 9, ECF No. 45-1.)

only three African-American females worked under the supervision of Nelson and that Nelson has never hired an African-American male of any age. (*Id.*)

In her Amended Response in Opposition to the Defendant's Motion for Summary Judgment, the Plaintiff cites additional evidence, which she believes demonstrates a general pattern of racial discrimination. The Plaintiff argues that she was the victim of racial discrimination because of repeated incidents in which unspecified individuals referred to her race and left "racial items" on her desk. (Pl.'s Am. Mem. in Supp 8.) According to the Plaintiff, her superiors never addressed these incidents of racial discrimination. (*Id.*) The Plaintiff also reports being "singled out" after watching the inauguration ceremony for President Obama with colleagues and denied a lunch break as punishment. (*Id.*)

b.      *Defendant's Motion to Strike*

Defendants have moved to strike portions of the Plaintiff's submissions: her Affidavit; Response in Opposition to the Defendant's Motion to Strike;[4] Memorandum in Support of the Plaintiff's Response in Opposition; and reference exhibits. (*See* Def.'s Mot. to Strike, ECF No. 46; Def.'s Mot. to Strike, ECF No. 50). The Court will analyze the Defendants' arguments for striking only insofar as they are necessary to decide the motion for summary judgment.[5]

i.      *Paragraph 12 of the Plaintiff's Affidavit*

_____

[4] The Plaintiff's Response and Memorandum in Support were filed three days late. However, the Defendant does not argue that it was prejudiced by the three day delay in the filing of the Plaintiff's Response. In this instance, the Court considers this default to be de minimis. Striking the Plaintiff's Response for a minor mistake would deny her the opportunity to fully present her arguments and would deny the court the benefit of a fully briefed motion for summary judgment. The Court will therefore consider the Plaintiff's Response and Memorandum in Support in ruling on the Defendant's Motion to Strike.

[5] For those portions of the Motions to Strike that address evidence not material to the outcome of the Motions for Summary Judgment, the Court will deny the Motions to Strike as moot.

The Defendant challenges the admissibility of paragraph 12 of the Plaintiff's affidavit, which states:

> I was personally told a subjective and unauthorized system of 19 key requirements, was developed through the South Bend Human Rights Commission, and applied to my rating for promotion. Later I discovered they were also utilized to rate another (Black female) co-worker, who had been employed with the Health Department for 22 years, also denying her advancement. Human Rights denied all knowledge of this instrument.

(T. Graves Aff. ¶ 12.) In the Defendant's view, the statements contained in paragraph 12 are inadmissible hearsay and that the Plaintiff has not established her personal knowledge of the information therein. (Mem. In Supp. of Def.'s Mot. To Strike the Aff. of T. Graves 4-5, ECF No. 47.) In response, the Plaintiff argues that the information contained in paragraph 12 was based on "face to face" conversations with individuals who had relevant knowledge regarding the 19 key requirements considered in the hiring process. (Pl.'s Mem. of Law Opp'n Def.'s Mot. to Strike, ECF No. 49-3 at 8.) In turn, the Defendant argues that the Plaintiff has still failed to establish personal knowledge because the exhibits upon which she relies are not authenticated and contain inadmissible hearsay; further, the Defendant argues that the Plaintiff failed to demonstrate the relevance of any of the exhibits. (Mem. in Supp. of Def.'s Mot. to Strike Pl.'s Resp. in Opp'n 3, ECF No. 51.)

Here, the Court agrees with the Defendant that paragraph 12 of Plaintiff's Affidavit is inadmissible. Paragraph 12 is a classic example of hearsay. The first sentence in paragraph 12 is an out of court statement offered to prove the truth of the matter asserted and is unsupported by an accompanying affidavit or deposition transcript of the individual who informed the Plaintiff of this information. The second and third sentences in paragraph 12 of the affidavit are inadmissible for similar reasons. In her Response to the Defendant's Motion to Strike, the Plaintiff states that

she learned of the information in the second and third sentences from "face to face" conversations with a co-worker and employee of the Human Rights Commission. (Pl.'s Mem. of Law Opp'n Def.'s Mot. to Strike, ECF No. 49-3 at 8.) The Plaintiff identifies her co-worker as Bettie Wright. (*Id.*) The Plaintiff also identifies the employee of the Human Rights Commission who allegedly denied knowledge of the ratings criteria as Diana Moya. (*Id.*) Again, the statements of these witnesses are hearsay and the Plaintiff has failed to attach an affidavit or deposition transcript from either of these witnesses. Other than the out of court statements of Betty Wright and Diana Moya, the Plaintiff has not identified any other source of personal knowledge for these statements. Therefore, the Court grants the Defendant's Motion to Strike paragraph 12 of the Plaintiff's Affidavit.

ii.      *Paragraph 21 of the Plaintiff's Affidavit*

The Defendant challenges the admissibility of paragraph 21 of the Plaintiff's affidavit, which states:

> Marc Nelson has only promoted one Black female in his tenure. From the first day of my hire to last day of my termination only three black females, inclusive of myself worked for Marc Nelson. Shortly after my termination, one of the two remaining females transferred from his supervision. Marc Nelson has never hired a black male of any age.

(T. Graves Aff. ¶ 21.) The Defendant asserts that the Plaintiff has not provided any foundation to establish her personal knowledge of the information therein. (Def.'s Mem. of Law in Supp. of Mot. to Strike the Aff. of T. Graves 9-10, ECF No. 47.) The Plaintiff responds that she has demonstrated a basis for personal knowledge through the submission of Exhibit 65 (Pl.'s Ex. 65, ECF No. 45-10 at 5), which lists the names of individuals allegedly hired and promoted by Marc Nelson. (Pl.'s Mem. of Law Opp'n Def.'s Mot. to Strike, ECF No. 49-3 at 12-13.) Exhibit 65

also details the number of African-Americans hired and promoted by Nelson. (Pl.'s Ex. 65, ECF No. 45-10 at 5.) According to the Plaintiff, Exhibit 65 was produced by the Defendant in discovery. (Pl.'s Mem. of Law Opp'n Def.'s Mot. to Strike, ECF No. 49-3 at 13.) Again, the Defendant argues generally that the Plaintiff has failed to establish personal knowledge because the exhibits upon which she relies are not authenticated and inadmissible hearsay; further, the Defendant argues that she failed to demonstrate the relevance of any of the exhibits. (Def.'s Mem. of Law in Support of Mot. To Strike Pl.'s Resp. in Opp. 3, ECF No. 51.) However, the Defendant does not dispute that Exhibit 65 was produced during discovery.

The Court finds that paragraph 21 of the Plaintiff's Affidavit is admissible.The Plaintiff has established personal knowledge of the information contained in paragraph 21 of her affidavit through her submission of Exhibit 65 and the Defendant has not challenged the Plaintiff's assertion that Exhibit 65 was provided to the Plaintiff as part of discovery. Further, it is reasonable to believe that the Plaintiff would have personal knowledge of the hiring and promotion of fellow co-workers during her employment with the Defendant. In combination, the Plaintiff's personal observations while employed with the Defendant and the contents of Exhibit 65 constitute a sufficient foundation for the Court to find that the Plaintiff has demonstrated sufficient personal knowledge of the information contained in paragraph 21. Therefore, the Court denies the Defendant's Motion to Strike as to paragraph 21 of the Plaintiff's Affidavit. Whether the information provided in paragraph 21 is relevant to her claims before the Court is a separate analysis that will depend on the law governing those claims.

c.      *Analysis*

The Plaintiff argues that the Defendant's decision not to hire her for the position of Lead Staff Member was premised on racial discrimination. Title VII makes it unlawful for an employer "to fail to refuse or hire . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff can prove discrimination under Title VII by using either the direct or the indirect method of proof. *Darchak v. Chi. Bd. of Educ.,* 580 F.3d 622, 630 (7th Cir. 2009). Although the Plaintiff does not identify what method of proof she relies on in her efforts to defeat summary judgment, the Court will consider the evidence under both the direct and indirect method of proof.

i.    *Direct Method of Proof*

Under the direct method, a plaintiff must produce either direct or circumstantial evidence that would permit a jury to infer that discrimination motivated an adverse employment action. *Hasan v. Foley & Lardner LLP,* 552 F.3d 520, 527 (7th Cir. 2008). Direct evidence is something close to an explicit admission by the employer that a particular decision was motivated by discrimination; this type of evidence is rare, but it "uniquely reveals" the employer's intent to discriminate. *See Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712, 720 (7th Cir. 2005).

More common is circumstantial evidence, which "suggests discrimination albeit through a longer chain of inferences." *Hasan,* 552 F.3d at 527 (internal citation omitted). A plaintiff can survive summary judgment by producing either type of evidence as long as it creates a triable issue on whether discrimination motivated the employment action. The Seventh Circuit has identified three categories of circumstantial evidence: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected

group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Darchak,* 580 F.3d at 631. A plaintiff need not produce evidence in each category to survive summary judgment. *See id.* Upon a plaintiff's production of such evidence, the defendant's summary judgment motion must fail; there is no burden-shifting. *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 n. 3 (7th Cir. 2011.)

Under the first category of circumstantial evidence, the Plaintiff points to three pieces of evidence that, she argues, a jury could rely on in finding that the Defendant discriminated against her on the basis of race when it did not hire her for the position of Lead Staff Member. The Plaintiff states that she was subject to "repeated incidences of references to her race, ethnic, group, and racial items set on her desk that were not properly addressed by her superiors." (Pl.'s Am. Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 8, ECF No. 45-1.) In support of this assertion, the Plaintiff first cites Exhibit 16, which appears to be a photograph of a display of books about President Obama in which someone inserted a book about monkeys. (Pl.'s Ex. 16, ECF No. 45-5 at 14.) The Plaintiff does not identify where this display was located and makes no effort to identify the individual(s) responsible for the display. Nor does the Plaintiff make any effort to explain how the display relates to Nelson's decision not to recommend her for the position of Lead Staff Member. Moreover, based on the copy of the e-mail on which the Plaintiff wrote "Monkey Attachment" (Pl.'s Ex. 16, ECF No. 45-5 at 13), the book display appears to have been constructed well after the decision not to hire the Plaintiff for the position of Lead Staff Member had been made. Wright was hired for the position of Lead Staff Member in

October 2008, at which time the Plaintiff filed a grievance with the Defendant's Personnel Committee. The e-mail to which the Plaintiff attached the "Monkey Attachment" is dated January 20, 2009. (*Id.*) Given that the hiring decision was made at least three months prior to January 20, 2009,and there is no evidence who was responsible for the book display, it has no probative value to the impact of racial bias in the decision not to hire the Plaintiff.

Second, the Plaintiff contends that she was "denied a lunch hour after being singled out of five other individuals who were watching the Obama inauguration ceremony." (ECF No. 45-1 at 8.) The relevance of this piece of evidence to the Plaintiff's claim of racial discrimination for failure to hire is also questionable. The Plaintiff implies that she was "singled out" because of her race; however, this claim of race discrimination is contradicted by the Plaintiff's own statement that she watched the inauguration with five individuals, one of whom was an African-American male, Dr. Roland Chamblee. (*See* T. Graves Aff. ¶ 22.) In addition, President Obama's inauguration occurred months after the decision not to hire the Plaintiff for the position of Lead Staff Member had been made in October 2008. Further, the Plaintiff does not allege that Nelson was in any way responsible for "singling her out." Instead, the Plaintiff states that Linda Mauller was the individual who disciplined her for watching the inauguration at work. (T. Graves Aff. ¶ 13; Pl.'s Ex. 16, ECF No. 45-5 at 13.)

Third, the Plaintiff identifies a racially offensive calendar entry (Pl.'s Ex. 20, ECF No. 45-5 at 19) that she alleges was placed on her desk on October 31, 2007, as further evidence of racial discrimination by the Defendant. The calendar entry is for Saturday, October 20, 2007. (*Id.*) At the top of the calendar page is the computer-printed title "On Noble Sacrifices for Civil Rights" with a quote from the African-American model Naomi Campbell. (*Id.*). The quote reads,

"I look at [modeling] as something I'm doing for black people in general." (*Id.*) The Plaintiff again makes no effort to explain the relevance of this piece of evidence to her claim that Marc Nelson's decision to recommend that Wright be hired for the position of Lead Staff Member was racially motivated. Nor does the Plaintiff make any effort to authenticate the calendar entry itself.

Under the second category of circumstantial evidence, paragraph 21 of the Plaintiff's Affidavit and Plaintiff's Exhibit 65 describe the hiring and promotion of Caucasian employees versus African-American employees by Nelson. (T. Graves Aff. ¶ 21; Pl.'s Ex. 65, ECF No. 45-10 at 5.) According to the Plaintiff:

> Marc Nelson has only promoted one Black female in his tenure. From the first day of my hire to last day of my termination only three black females, inclusive of myself worked for Marc Nelson. Shortly after my termination, one of the two remaining females transferred from his supervision. Marc Nelson has never hired a black male of any age.

(T. Graves Aff. ¶ 21.) Exhibit 65 is a list of the employees hired and promoted by Nelson. The list shows that Nelson hired 23 individuals of which 14 were female, nine were male, and five were African-American. (Pl.'s Ex. 65, ECF No. 45-10 at 5.) In addition, the list indicates that Nelson promoted six employees. (*Id.*) Of the six promoted employees, five were female, one was male, and one was African-America. (*Id.*) Evidence that similarly situated employees outside of the protected group systematically receive better treatment is valid circumstantial evidence. However, the Plaintiff points to no evidence showing that any African-American employees were similarly situated to their Caucasian co-workers or vice versa. Exhibit 65 does not include information regarding the titles, job responsibilities, experience, and qualifications of the individuals listed. Without this evidence, a comparison of the employees by race in an effort to

discern racial bias is meaningless.[6] Based on the designated facts, the Plaintiff cannot create an issue of fact as to whether similarly situated employees were treated more favorably.

Under the third category of circumstantial evidence, the Plaintiff does not explicitly identify any evidence that supports her argument that the Defendant decision to hire Wright because she was the better qualified candidate is a pretext for racial discrimination. However, construing the Plaintiff's filings liberally, the Court understands the Plaintiff to argue that the cumulative evidence submitted by her establishes that racial bias, rather than the belief that Wright was the better qualified candidate for the position of Lead Staff Member, was the basis for the Defendant's decision not to hire the Plaintiff. As will be discussed in greater detail in the Court's analysis of the indirect method of proof, the Plaintiff repeatedly states that the Defendant engaged in discrimination based on race when it decided not to hire the Plaintiff; however, the Plaintiff does not present substantive evidence challenging Wright's qualifications or demonstrating that her own qualifications were superior to Wright's. The record indicates that (1) Wright had a scientific degree and the Plaintiff did not; (2) Wright scored higher on the evaluation used to analyze the candidates' abilities in 19 key job areas; (3) Wright "demonstrated a greater understanding of the needs of the Environmental Health Lead Program" than the Plaintiff in her interview with Nelson; (4) Mauller, the Environmental Health Assistant Director, interviewed Wright and the Plaintiff and recommended Wright for the position; and (5) Wright

---

[6] The Court notes that the Plaintiff's argument for racial discrimination in hiring is actually undercut by Exhibit 65, which shows that Nelson had in fact hired five African-American individuals and promoted one African-American employee. (Pl.'s Ex. 65, ECF No. 45-10 at 5.) Approximately 22% of the individuals hired by Nelson and 17% of the employees promoted by Nelson were African-American. It is illogical to point to these statistics as evidence of Nelson's discriminatory hiring practices.

had broad experience with the Defendant's Lead program whereas the Plaintiff worked almost exclusively in community outreach. The Plaintiff has not presented any evidence that seriously challenges Wright's superior qualifications and the Defendant's belief that Wright was the more qualified candidate.

"[C]ircumstantial evidence under the direct method of proof . . . requires evidence leading *directly* to the conclusion that an employer was illegally motivated, without reliance on speculation." *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 676 (7th Cir. 2012). The Plaintiff has failed to present evidence that satisfies this requirement. The record in the instant case includes evidence of discrete incidents of racial insensitivity. However, several of these incidents occurred after the decision not to hire the Plaintiff were made. Moreover, the Plaintiff does not make any allegations and does not offer any evidence that Nelson was involved in these incidents. Further, the record includes the Plaintiff's personal observations and a list produced by Defendant in discovery that detail Nelson's hiring patterns based on race and gender. However, the lack of evidence regarding the relative qualifications and experience of the individuals hired or promoted renders any attempt to analyze these hiring patterns ineffectual. Finally, the Plaintiff has presented evidence which she believes demonstrates that the Defendant lied about the reason it hired Wright instead of the Plaintiff; according to the Plaintiff, race, rather than qualifications and experience, was the basis for the Defendant's decision not to hire her. The record does not support the Plaintiff's contention. Here, the Plaintiff has failed to present evidence that she was more qualified than Wright. Much of the Plaintiff's argument is based on speculation and conjecture which is insufficient to defeat summary judgment. *See McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In the end, the Plaintiff has failed to prove discrimination

under the direct method of proof because her evidence does not connect Nelson's hiring decision to the Plaintiff's race.

ii.    *Indirect Method of Proof*

Under the indirect method of proof, a Title VII plaintiff may show that he is the victim of racial discrimination by establishing a prima facie case of unlawful discrimination. For a failure to hire claim, this requires the plaintiff to show that: (1) he is a member of a protected class; (2) he applied for an available position; (3) he was qualified for the position for which he applied; and (4) another person, not in the protected class, was offered the position or the position remained open. *Gore v. Ind. Univ.,* 416 F.3d 590, 592 (7th Cir. 2005). Once a plaintiff establishes a prima facie case, an inference of discrimination arises. *Id.* The burden of production then shifts to the defendant-employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Farr v. St. Francis Hosp. and Health Ctrs.,* 570 F.3d 829, 833 (7th Cir. 2009). If the defendant-employer carries this burden, the plaintiff must show that the reason proffered by the employer was pretextual in nature. *Id.*

As the Seventh Circuit has pointed out:

> Normally, we first determine whether a plaintiff has established a prima facie case before putting the employer to the burden of demonstrating a non-discriminatory reason for not hiring the plaintiff and engaging in the pretext analysis.
> In some cases, though, the issue of qualifications for the job and the question of pretext overlap. When the employer asserts as the non-discriminatory reason for not hiring the plaintiff that she was not as qualified as other candidates for the position, the credibility of the employer's assertion is at issue for both the second and fourth elements of the plaintiff's prima facie case and the pretext analysis. There is a good deal of overlap in this case between these key issues and we therefore analyze them together.

*Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422, 432 (7th Cir. 2010) (internal citations omitted). Therefore, the Court will proceed to the key issues together.

In this case, the Defendant asserts that Wright, rather than the Plaintiff, was hired for the position of Lead Staff Member because Wright was the more qualified candidate. In the failure-to-hire context, a desire to hire the more experienced or better qualified applicant is a non-discriminatory, legitimate, and common reason on which to base a hiring decision. *See, e.g., Gorence v. Eagle Food Ctrs., Inc.,* 242 F.3d 759, 766 (7th Cir. 2001); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 458–59 (7th Cir. 1999); *see also Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 515–16 (7th Cir. 1996). In support of its position, the Defendant cites Nelson's Affidavit, which details the hiring process for the position of Lead Staff Member and sets forth Nelson's reasons for believing Wright, rather than the Plaintiff, was the better candidate for the position of Lead Staff Member. According to Nelson, (1) Wright scored higher in the 19 key job requirements evaluation; (2) Wright "demonstrated a greater understanding of the needs of the Environmental Health Lead Program" than the Plaintiff; (3) Mauller, the Environmental Health Assistant Director, interviewed Wright and the Plaintiff and recommended Wright for the position; (4) Wright had a broad experience with the Defendant's Lead program whereas the Plaintiff worked almost exclusively in community outreach; (5) Wright possessed a scientific degree, which the Plaintiff did not; and (6) the Plaintiff had a history of disciplinary problems while working for the Defendant.

Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). "A 'pretext for

discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." *Id.* at 684.

The Plaintiff offers little in the way of a response to the Defendant's assertion that Wright was hired because she was the more qualified candidate. The Plaintiff briefly challenges the Defendant's assertion that Wright was the better qualified candidate for the position of Lead Staff Member by asserting that Wright was a "housewife" for eight years prior to her employment with Defendant. (Pl.'s Am. Mem. in Supp. 8.) Further, the Plaintiff notes that Wright never worked as a Lead Assessor and required "training and promotion" in the first six months of her employment with Defendant. (*Id.*) In support of these contentions, the Plaintiff cites to her own affidavit, which does not describe the basis of her knowledge, (T. Graves Aff. ¶ 8), and an unauthenticated exhibit (Pl.'s Ex. 9, ECF No. 45-4 at 30), which describes her grievance filed with Defendant after the hiring decision had been made. Rather than presenting evidence of her own qualifications or challenging Wright's qualifications with admissible evidence, the Plaintiff repeatedly makes conclusory statements that the Defendant's argument is a "lie" or "pretext" predicated on "deceit." Ultimately, the Defendant's evidence it believed that Wright was the better qualified candidate for the position of Lead Staff Member stands unrebutted. The Plaintiff has not presented evidence from which a reasonable jury could find that the Defendant's contention that Wright was the better qualified candidate is a pretext for racial discrimination. Consequently, the Court concludes that the Plaintiff has failed to present evidence establishing a triable issue of material fact under the indirect method of proof and grants the Defendant's motion for summary judgment on this point.

**2.       *Termination***

a.       *Facts Relevant to Termination Claim*

The Defendant challenges the Plaintiff's claim that her position was terminated because of her race, arguing first that the Plaintiff has presented no direct evidence demonstrating that the Defendant's decision to terminate the Plaintiff's position was based on racial animus; second, that the Plaintiff has not produced any circumstantial evidence pointing directly to racial discrimination in the decision to terminate her employment; and third, that the Plaintiff is not able to establish a prima facie case of discrimination under the indirect method of proof. (Def.'s Mem. of Law in Supp. of Summ. J. 13.)

In support of its position, the Defendant submits an Appendix of Exhibits, which includes the Plaintiff's Complaint, the Plaintiff's Amended Complaints, the Plaintiff's Response to Request for Production of Documents, an Affidavit of Marc Nelson, and an Affidavit of Nick Molchan. (App. of Exs., ECF No. 39.) Nelson's and Molchan's affidavits describe the decision making process that resulted in terminating the Plaintiff's employment with the Defendant. (M. Nelson Aff., ECF No. 39-4; N. Molchan Aff., ECF No. 39-5.) According to Nelson, on September 8, 2009, Chuck McMannis, the South Bend Housing Authority Project Manager, informed Nelson that the HUD grant funding the Plaintiff's employment with the Defendant would end on October 30, 2009, if the grant was not renewed or extended. (M. Nelson Aff. ¶ 26.) After receiving this information, Nelson, Molchan,[7] and Roland Chamblee, M.D.,[8] met with the

_____

[7] Nick Molchan was the Administrator of the St. Joseph County Health Department during the Plaintiff's employment with the Defendant and has worked in that capacity since December 6, 2004. (N. Molchan Aff. ¶ 4.)

[8] Dr. Roland Chamblee was the St. Joseph County Health Department Health Officer. (M. Nelson Aff. ¶ 27.)

Plaintiff and explained to her that the grant funding her employment with the Defendant would terminate on October 30, 2009, if it was not extended or renewed. (M. Nelson Aff. ¶ 27; N. Molchan Aff. ¶ 31.) Nelson attests that he did not have the authority to obtain an extension or renewal of the HUD grant funding the Plaintiff's employment; Nelson did, however, request that the South Bend Housing Authority attempt to obtain a renewal or extension of the HUD grant. (M. Nelson Aff. ¶¶ 28-29.) In response to his request, the South Bend Housing Authority informed Nelson that any extension or renewal of the grant would only involve funding for remodeling houses and performing clearance exams. (*Id.* ¶ 30.) On October 23, 2009, Nelson met with the Plaintiff and informed her that, even if the grant was renewed or extended, it would not include funding for the Plaintiff's position with the Defendant. (*Id.* ¶ 31.) A week later, on October 30, 2009, Chamblee issued a formal notification to the Plaintiff concerning the termination of her employment with the Defendant due to the non-renewal of HUD grant. (M. Nelson Aff. ¶ 32; N. Molchan Aff. ¶ 32.) Nelson asserts that he did not return any money that funded the Plaintiff's position to the South Bend Housing Authority, HUD, or any other governmental agency. (M. Nelson ¶ 33.) Further, Nelson states that he did not recommend termination or limitation of the HUD grant which funded the Plaintiff's position. (*Id.* ¶ 35.) According to Nelson, he had no authority to recommend the termination or limitation of the HUD grant in question. (*Id.*)

The Plaintiff responds to the Defendants' contentions by arguing generally that she has presented sufficient evidence to survive summary judgment on her claim that the Defendant racially discriminated against her in terminating her employment. (Pl.'s Am. Mem. in Supp., ECF No. 45-1.) The Plaintiff does not identify any specific facts in support of this claim.

Although the Plaintiff's factual narrative is disjointed and, at times, difficult to understand, the Court will attempt to identify facts in the record that could be construed to support her claim. According to the Plaintiff, she "discovered through viable sources" that Nelson had requested the South Bend Housing authority to eliminate her position from the Lead Remediation Grant. (Pl.'s Am. Mem. in Supp. 2.) The Plaintiff states that Nelson asked Chamblee to fire the Plaintiff. (T. Graves Aff. ¶ 15.) After Chamblee refused Nelson's request, the Plaintiff asserts that Nelson "informed the Housing Authority [that] the Health Department would not longer need [lead] outreach." (*Id.*) Continuing with her narrative, the Plaintiff states that she "was told [Nelson] refused twice to consider continuing my employment and issued (three) reprimands to me in September of 2009 within a ten day span, followed by notifying me of layoff." (*Id.*) The Plaintiff attests that she "[has] knowledge that [Nelson] did return monies to the South Bend Housing [Authority] and was given that information from the Housing Authority." (*Id.* ¶ 16.) According to the Plaintiff, she "was personally told by the Housing Authority representatives that [Nelson] requested my job be eliminated and that over $80,000.00 had been returned and not used." (*Id.* ¶ 24.) Further, the Plaintiff contends that she "[has] knowledge" that Nelson "refused to call [her] back after layoff and hired a younger Black female in a similar position when it became available to cover the pretext of discrimination." (*Id.* ¶ 17.) Citing Exhibit 57, the Plaintiff states that "[w]hite employees were retained and transferred to continuing funding sources applied as a part of the same program function and impetus." (Pl.'s Am. Mem. of Law in Opp to Def.'s Mot. Summ. J., ECF No. 45-1 at 3.)

In addition, the Plaintiff describes at some length her interactions with Chamblee in the month prior to the termination of her employment with the Defendant. The Plaintiff reports that

in October 2009, Chamblee informed the Plaintiff of "Nelson's emotional appeal for [Chamblee] to discharge her." (T. Graves Aff. ¶ 22.) According to the Plaintiff, Chamblee told her that Nelson was crying at the time of their conversation. (*Id.*) Continuing, the Plaintiff asserts that Chamblee informed her that Nelson was sexually attracted to her. (*Id.*) Chamblee also purportedly told the Plaintiff that he was the only person with the authority to fire her and that he would not take Nelson's advice to terminate her position. (*Id.*) The Plaintiff also states that Chamblee told her that Nelson "had done the same to a former nurse named Misty, who was discharged." (*Id.*) In conclusion, the Plaintiff states that she believes Nelson and Molchan "took advantage of [Chamblee's] advanced age to further their own ends." (*Id.* ¶ 23.)

b.    *Defendant's Motion to Strike*

Defendants have moved to strike portions of the Plaintiff's Affidavit, Response in Opposition to the Defendant's Motion to Strike, Memorandum in Support of the Plaintiff's Response in Opposition, and reference exhibits. (*See* Def.'s Mot. to Strike, ECF No. 46; Def.'s Mot. to Strike, ECF No. 50). The Court will here analyze the Defendants' arguments for striking only insofar as they are necessary to decide the motion for summary judgment.[9]

i.    *Paragraph 15 of the Plaintiff's Affidavit*

The Defendant challenges the admissibility of paragraph 15 of the Plaintif''s Affidavit. In paragraph 15, the Plaintiff states:

> I did not receive any reprimands from Marc Nelson until June 2009 of which Mr. Nelson had to rescind. Mr. Nelson asked the deceased Dr. Roland Chamblee to "fire Teresa", when Dr. Chamblee refused, Marc Nelson informed the Housing Authority the Health Department would no longer need outreach. I was told Marc

---

[9]For those portions of the Motions to Strike that address evidence not material to the outcome of the Motion for Summary Judgment, the Court will deny the Motions to Strike as moot.

Nelson refused twice to consider continuing my employment and issued (three) reprimands to me in September of 2009 within a ten day span, followed by notifying me of layoff.

(T. Graves Aff. ¶ 15.) In the Defendant's view, several of the statements contained in paragraph 15 are inadmissible hearsay and the Plaintiff has not established her personal knowledge of the information therein. (Mem. In Supp. of Def.'s Mot. To Strike the Aff. of T. Graves 6-7, ECF No. 47.) In response, the Plaintiff argues the portions of paragraph 15 are corroborated by Exhibits 1, 3, 23, 25, 28, 34, 36, and 39. (Pl.'s Mem. of Law Opp'n Def.'s Mot. to Strike, ECF No. 49-3 at 8.) Exhibits 1, 3, and 28 are annual evaluations of the Plaintiff's job performance. Exhibits 23, 25, 34, and 36 are written reprimands drafted by Nelson concerning the Plaintiff's job performance and behavior in the workplace. Exhibit 39 is labeled "5th Reprimand." A review of the exhibit indicates that it is a letter drafted by Chamblee on September 10, 2009, notifying the Plaintiff that her position with the Defendant would be terminated if the HUD grant funding her position was not renewed or extended.

These reprimands do provide evidence that the Plaintiff did not receive any written reprimands prior to June 2009 and that the Plaintiff was reprimanded at least twice in September 2009. However, these exhibits do not provide any evidence of Chamblee's conversations with Nelson. The Plaintiff has not submitted an affidavit or deposition testimony of Chamblee. Nor has she identified any other basis for personal knowledge of Chamblee's or Nelson's statements. Further, the Plaintiff states that "[she] was told [Nelson] refused twice to consider continuing my employment[.]" (T. Graves Aff. ¶ 15.) The Plaintiff does not identify who told her this and has not presented any other evidence that serves as the basis for her personal knowledge of this statement. Consequently, the Court agrees with the Defendant that the statements contained in

paragraph 15 unrelated to the written reprimands should be stricken from the record.

ii.     *Paragraph 16 of the Plaintiff's Affidavit*

The Defendant challenges the admissibility of paragraph 16 of the Plaintiff's Affidavit, which states, "I have knowledge Mr. Nelson did return monies to the South Bend Housing [Authority] and was given that information from the Housing Authority." (T. Graves Aff. ¶ 16.) The Defendant contends that this is inadmissible hearsay. In her Response, the Plaintiff states "[I have] personal knowledge of the fact that Mr. Nelson returned monies to the Housing Authority by Steve Peterson and Charles McMannus." (Pl.'s Mem. of Law Opp'n Def.'s Mot. to Strike 10-11.) Further, the Plaintiff cites Exhibit 59, which, according to her, is an in-house memorandum which shows the "under run budget which was returned to the Housing Authority and not fully utilized." (*Id.* 11.)

To the extent that the Plaintiff implies she has personal knowledge of money being returned to the South Bend Housing Authority because of conversations with Peterson and McMannus, the Court agrees with the Defendant that these out of court statements are inadmissible and are not a sufficient basis for personal knowledge. However, the Plaintiff has presented Exhibit 59, an e-mail from Nelson to McMannus, which indicates that money was, in fact, returned from the Defendant to the Housing Authority in 2009. (Pl.'s Ex. 59, ECF No. 45-9 at 9.) In an e-mail sent on September 15, 2010, Nelson produced an estimate of how much "we"[10] would run under budget. (*Id.*) Nelson estimated that $24,000 would remain unspent on October 31. (*Id.*). Nelson further noted that the $24,000 did not include the $81,685 that the Defendant

_____

[10]It is unclear from the context whether "we" refers to the Defendant or a sub-unit of the Defendant like the Environmental Health Department of which Nelson was the director.

returned to the South Bend Housing Authority for paying the homeowners 15%. (*Id.*) Neither party has attempted to clarify the significance of this document or provide any context for the document. Nonetheless, the Court recognizes that this e-mail does support the Plaintiff's contention that she has personal knowledge that Nelson returned *some* money to the South Bend Housing Authority. Therefore, the Court will deny the Defendant's Motion to Strike as to paragraph 16 of the Plaintiff's Affidavit.

iii.    *Paragraph 17 of the Plaintiff's Affidavit*

The Defendant challenges the admissibility of paragraph 17 of the Plaintiff's Affidavit, which states, "I have knowledge Mr. Nelson refused to call me back after layoff and hired a younger Black female in a similar position when became available to cover the pretext of discrimination." (T. Graves Aff. ¶ 17.) The Defendant argues that the Plaintiff has not demonstrated personal knowledge of the information in this paragraph and that the conclusion of the paragraph contains a legal argument rather than an assertion of fact. In her Response, the Defendant points to Exhibit 60 as the basis for her personal knowledge of the information contained in paragraph 17. Exhibit 60 is a "vacancy announcement" posted sometime in early 2010 for the position of "Environmental Health Specialist." (Pl.'s Ex. 60, ECF No. 45-9 at 10-11.) The vacancy announcement details the job requirements and responsibilities for the position of Environmental Health Specialist. (*Id.*)

The Court agrees with the Defendant that the Plaintiff has not established a basis for personal knowledge of the information contained in Paragraph 17. The Plaintiff does not identify the source of her information for the statement that Nelson "refused" to call her back after the layoff. The Court further notes that Plaintiff's assertion that a younger, African-American female

was hired for the vacant position "to cover the pretext of discrimination" is a legal argument

inadmissible under Federal Rule of Civil Procedure 56(c)(4). Therefore, the Court will strike

paragraph 17 of the Plaintiff's Affidavit.

iv.     *Paragraph 22 of the Plaintiff's Affidavit*

The Defendant challenges the admissibility of paragraph 22 of the Plaintiff's Affidavit,

which states:

> In October 2009, the late Dr. Roland Chamblee, Chief Health Officer and (a black
> male), discussed with me Mr. Nelson's emotional appeal for him to discharge me
> and stated "Marc was in tears" at the time of their conversation. Dr. Chamblee
> also disclosed to me, that Mr. Nelson was sexually attracted to me, and would
> never take Marc's advice to terminate my employment as "Dr. was the only
> person who could fire me." Dr. Chamblee also told me Marc Nelson had done the
> same to a former nurse named Misty, who was discharged.

(T. Graves Aff. ¶ 22.) In the Defendant's view, the entire paragraph is inadmissible hearsay. In

her Response, the Plaintiff asserts that the information in this paragraph is supported by Exhibit

45, a letter written by Nelson regarding his conversation with Chamblee. In the letter, Nelson

states that he and Chamblee did not want to terminate the Plaintiff's position and that they both

believed that the Plaintiff did "high quality work." (Pl.'s Ex. 45, ECF No. 45-8 at 5.) The letter

also briefly described interpersonal problems between the Plaintiff and her co-workers. (*Id.*).

The Court agrees with the Defendant that paragraph 22 should be stricken from the

record. The Plaintiff essentially provides a narrative version of a conversation she had with

Chamblee. Chamblee's statements are a classic example of hearsay. Moreover, the letter the

Plaintiff cites as the basis of her personal knowledge contradicts much of paragraph 22. Nelson's

letter does not include any information about him crying, being sexually attracted to the Plaintiff,

or wanting to terminate the Plaintiff's position. Instead, the letter indicates that Nelson wanted

the Plaintiff to retain her position because of the high quality of her work. In short, the Plaintiff

has not established a basis for personal knowledge of the factual assertions contained in

paragraph 22. Therefore, the Defendant's Motion to Strike as it relates to paragraph 22 will be

granted.

v.      *Paragraph 24 of the Plaintiff's Affidavit*

The Defendant challenges the admissibility of paragraph 24 of the Plaintiff's affidavit,

which states, "I was personally told by the Housing Authority representatives that Mr. Nelson

requested my job be eliminated and that over $80,000.00 had been returned and not used." (T.

Graves Aff. ¶ 24.) The Defendant contends that paragraph 24 is inadmissible hearsay and should

be stricken from the record. In her Response, the Plaintiff argues that she "has personal

knowledge of the fact that Mr. Nelson returned monies to the Housing Authority by Steve

Peterson and Charles McMannus." (Pl.'s Mem. of Law Opp'n Def.'s Mot. to Strike 14.) In

support of her assertion that she has personal knowledge of the facts contained in paragraph 24,

the Plaintiff cites Exhibits 41 and 59. (*Id.*) According to the Plaintiff, Exhibit 41 is an "in-house

memorandum . . . documenting Marc Nelson pre-emptively appropriated the Plaintiff's salary

before the reduction in requesting her elimination in an e-mail." (*Id.*) The Plaintiff describes

Exhibit 59 as the "under run budget which was returned to the Housing Authority and not fully

utilized." (*Id.*).

In the Plaintiff's Affidavit, paragraph 24 is essentially a more detailed version of

paragraph 16. As previously noted, to the extent that the Plaintiff cites conversations with Steve

Peterson and Charles McMannus as a basis for her personal knowledge, these out of court

statements are inadmissible hearsay. Exhibit 41 is an e-mail from Amy Ruppe to Nelson on

33

September 15, 2009. (Pl.'s Ex. 41, ECF No. 45-8 at 1.) The e-mail identifies the monetary amounts "set aside for the homeowners 15% match:"

> Teresa's salary: $14,897.16
>
> PPS salary: $14,228.84
>
> Fica: $6,740.91
>
> Perf: $2,162.58
>
> GI: $43,658.51

(*Id.*). As previously discussed with respect to paragraph 16, Exhibit 59 is an e-mail from Nelson to McMannus, which indicates that money was, in fact, returned from the Defendant to the Housing Authority in 2009. (Pl.'s Ex. 59, ECF No. 45-9 at 9.) These e-mails provide a sufficient foundation to establish the Plaintiff's personal knowledge of her assertion that the Defendant had returned over $80,000 to the South Bend Housing Authority. However, other than referencing inadmissible out of court statements, the Plaintiff has not provided any evidence establishing that Nelson requested that the Plaintiff's position be "eliminated." Therefore, the Court will strike the first half of paragraph 24 in the Plaintiff's Affidavit.

c.  *Analysis*

The Plaintiff argues that her position with the Defendant was terminated on account of her race. Title VII makes it unlawful for an employer to discharge an employee because of that person's race, among other grounds. 42 U.S.C. § 2000e. Similar to her failure to hire claim, the Plaintiff may proceed with a claim of termination based on racial discrimination under the direct or indirect method of proof. *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733 (7th Cir. 2011).

i.  Direct Method of Proof

To survive summary judgment under the direct method, the Plaintiff "must demonstrate a triable issue as to whether discrimination motivated the adverse employment action of which he complains." *Davis v. Time Warner Cable of Se. Wis., LP*, 651 F.3d 664, 672 (7th Cir. 2011) (citing *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009)). The Plaintiff has not pointed to any direct evidence of a discriminatory motive on the part of the Defendant. Nor has the Plaintiff made any attempt to identify circumstantial evidence of racial bias in the Defendant's decision to terminate her position of employment. Nonetheless, the Court has sifted through the Plaintiff's scattershot factual narrative.

The record does not contain any evidence related to the first category of circumstantial evidence as identified by the Seventh Circuit. However, the Plaintiff does appear to assert evidence of the second category—that "similarly situated employees outside the protected class received systematically better treatment." *Darchak v. Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009). Here, the Defendant contends that the Plaintiff's position was terminated because the HUD grant that funded the position was not renewed or extended. However, according to the Plaintiff, "[w]hite employees were retained and transferred to continuing funding sources applied as a part of the same program function and impetus." (Pl.'s Am. Mem. in Supp. 3.) The Court understands the Plaintiff to argue that, despite the loss of the grant funding, white employees whose positions were funded by the grant as well were able to retain their positions. In support of this assertion, the Plaintiff cites Exhibit 57. (*Id.*) Exhibit 57 is an e-mail dated January 4, 2010, from Nelson to Molchan, discussing the 2010-2011 grant year funding. (Pl.'s Ex. 57, ECF No. 45-9 at 7.) Nelson's e-mail makes reference to having sufficient funds for Paul's and Chuck's salary and benefits for 11 months. (*Id.*) However, the e-mail does not identify who Paul and

Chuck were, does not discuss whether Paul and Chuck were similarly situated to the Plaintiff, and does not identify the actual funding source for Paul's and Chuck's positions. Having reviewed the record, the Court has found no factual support for the Plaintiff's claim her position was terminated while white employees were transferred to new positions despite the loss of the grant funding.

Under the third category of circumstantial evidence, the Plaintiff must submit evidence that the employee was qualified for the job in question but was replaced in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Darchak*, 580 F.3d at 63. Here, the Plaintiff has failed to present any evidence that she was replaced in favor of a person outside the protected class. The Defendant contends that the Plaintiff's position was terminated because of the loss of a HUD grant that funded her position. After the Plaintiff's position was terminated, the Defendant obtained a new grant in 2010 to fund, according to the Plaintiff, a "similar position" to that of the Plaintiff's old position. (T. Graves Aff. ¶ 17.) However, according to the Plaintiff's own affidavit, the Defendant hired a "younger Black female" to fill the new position. (*Id.;* Pl.'s Mem. of Law Opp'n Def.'s Mot. to Strike 6, 11.) In this case, to the extent that the new position could be considered equivalent to the Plaintiff's old position, an African-American female "replaced" another African-American female. Consequently, the Plaintiff has not presented evidence that she was terminated and replaced with someone *outside the protected class*. Therefore, the Plaintiff has failed to present relevant evidence under the third category of circumstantial evidence.

In light of the foregoing evidence, the Court concludes that the Plaintiff has not presented circumstantial evidence "leading *directly* to the conclusion that an employer was illegally

motivated[.]" *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 676 (7th Cir. 2012).

ii.    *Indirect Method*

Under the indirect, burden-shifting method of proof,  a plaintiff must first establish a prima facie case of discrimination by providing evidence indicating that: (1) he is a member of a protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). If the plaintiff meets his burden of establishing a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the challenged action. *McDonnell*, 411 U.S. at 802; *see Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). If the defendant provides a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to offer evidence indicating that "the proffered reason is actually a pretext for illegal discrimination." *Grigsby v. LaHood*, 628 F.3d 354, 359 (7th Cir. 2010) (citing *Adelman–Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007)).

The Defendant does not challenge that the Plaintiff satisfied the first three requirements of a prima facie case of discrimination. The Defendant argues that the Plaintiff cannot meet the fourth requirement of a prima facie case of discrimination because she has not identified any similarly situated, non-African-American employee who was treated more favorably than the Plaintiff. The Plaintiff does not directly respond to this contention beyond her brief assertion that, despite the loss of the HUD grant, the Defendant "retained and transferred" white employees, but terminated her own position.

37

"Whether two employees are 'similarly situated' is a common sense inquiry that depends on the employment context." *Filar v. Bd. of Educ. of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008) (citing *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)). Similarly situated employees "must be 'directly comparable' to the plaintiff 'in all material respects,' " but they need not be identical in every conceivable way. *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009) (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610–11 (7th Cir. 2006)). A court looks for comparators, not "clone[s]." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010). So long as the distinctions between the plaintiff and the proposed comparators are not "so significant that they render the comparison effectively useless," the similarly-situated requirement is satisfied. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008); *see also Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006) (the question is whether "members of the comparison group are sufficiently comparable to [the plaintiff] to suggest that [the plaintiff] was singled out for worse treatment").

"All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Filar*, 526 F.3d at 1061 (citing *Humphries*, 474 F.3d at 405). The purpose of the similarly situated prong is simply to establish whether all things are in fact equal. *See id.* There must be "enough common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007). The "number [of relevant factors] depends on the context of the case." *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). In the usual case a plaintiff must at least show that the

comparators (1) "dealt with the same supervisor," (2) "were subject to the same standards," and (3) "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (quoting *Snipes v. Ill. Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002)).

In the present case, the Plaintiff broadly asserts that white employees whose positions were funded by the HUD grant received better treatment than she did, citing to Exhibit 57 for support for this factual statement. As previously noted, Exhibit 57 is an e-mail dated January 4, 2010, from Nelson to Molchan, discussing the 2010-2011 grant year funding. (Pl.'s Ex. 57, ECF No. 45-9 at 7.) In his e-mail, Nelson states that the draft budget proposal "has sufficient funds for 11 months of salary and benefits for Paul and Chuck. We will try to find other sources of funding for the one month but if we can't find any I hope the trust fund can cover the one month not funded in 2011." (*Id.*) Although the significance of this e-mail is unclear to the Court, presumably, the Plaintiff is attempting to identify "Paul" and "Chuck" as similarly situated employees. However, beyond citing to the e-mail identifying them by their first names, the Plaintiff provides no further evidence of their identity, their job responsibilities, and the source of funding for their positions. The record does not indicate whether Paul or Chuck are African-American or Caucasian; whether they were supervised by Nelson; whether their positions were funded by the same grant that supported the Plaintiff's position; whether they had similar job responsibilities as the Plaintiff; or whether they had similar qualifications and experiences as the Plaintiff. The Court cannot speculate to fill in these blanks for the Plaintiff. Nor could a reasonable jury find that similarly situated employees not in the Plaintiff's protected class were

treated more favorably given the paucity of the evidence in the record.

For the foregoing reasons, Plaintiff has failed to provide evidence demonstrating that she was treated less favorably than similarly situated employees outside of her protected class. Consequently, the Court finds that Plaintiff has not met her burden of establishing a prima facie case of discrimination under the indirect method and summary judgment in favor of Defendant is appropriate.

**3.** ***Hostile Work Environment***

a. *Facts Relevant to Hostile Work Environment Claim*

The Defendant challenges the Plaintiff's claim of a hostile work environment based on race. According to the Defendant, the Plaintiff has not offered any admissible evidence that would support such a claim. (Def.'s Mot. for Summ. J. 11-20.) The Plaintiff responds to the Defendants' challenge by arguing generally that she has presented sufficient evidence to survive summary judgment on the claim of a hostile work environment based on race. In support of her position, the Plaintiff relies on her own affidavit (T. Graves Aff., ECF No. 45-2) and an extensive collection of exhibits. (Pl.'s Exs., ECF Nos. 45-3 to 45-10.) The Plaintiff does not identify any specific facts in support of her claim. Although the Plaintiff's factual narrative is disjointed and, at times, difficult to understand, the Court will attempt to identify facts in the record supporting the Plaintiff's claim. According to the Plaintiff, Nelson harassed her on a regular basis, canceled her outreach activities, and questioned her participation on the Boards of Healthy Families and Healthy Start. (Pl.'s Am. Mem. in Supp. 6.) Further, the Plaintiff asserts that she received "unwarranted reprimands" and was "subjected to coercive threats." (*Id.* 7.) As previously discussed, the Plaintiff cites repeated incidents in which unspecified individuals

40

referred to her race and left "racial items" on her desk. (Pl.'s Am. Mem. in Supp 8.) According to the Plaintiff, her superiors never addressed these incidents of racial discrimination. (*Id.*) The Plaintiff also reports being "singled out" after watching the inauguration ceremony for President Obama with colleagues and denied a lunch break as punishment. (*Id.*).

b.      *Analysis*

An employee is subjected to a hostile work environment "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To prevail on his racial harassment claim, a plaintiff must have sufficient evidence to create a material issue of fact as to four elements: "(1) the work environment must have been both subjectively and objectively offensive; (2) his race must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must have been a basis for employer liability." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010). Factors that may be considered in determining whether the environment is hostile or abusive may include the frequency and severity of the conduct, whether it is physically threatening or humiliating, or merely an offensive utterance, and whether the conduct unreasonably interferes with an employee's work performance. *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691-92 (7th Cir. 2005) (citation omitted).

As part of her hostile work environment claim, the Plaintiff seeks to hold the Defendant liable for certain incidents that she never complained about until after she left her employment there. If an individual with managerial authority created the hostile work environment, the

employer can be held strictly liable. *Berry v. City of Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) (citing *Roby v. CWI, Inc.*, 579 F.3d 779, 784 (7th Cir. 2009)); *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004). But, if a co-worker created the hostile work environment, an employer must have been "negligent in discovering or rectifying the harassment" to be liable. *Berry*, 618 F.3d at 692 (citing *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d, 629, 636 (7th Cir. 2009)). Because she did not tell the Defendant the incidents at a time when they could have acted on them and provides no evidence to support the contention that the Defendant otherwise knew or should have known about these events, the Court will not permit her to use them to show negligence. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 549 (7th Cir. 2011) (finding no employer liability for co-worker harassment where plaintiff did not take sufficient action to make employer aware of conduct and employer had a policy in place for complaints that plaintiff did not utilize); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 391 (7th Cir. 2010) (same). In particular, there is no evidence the Plaintiff ever complained to anyone employed by the Defendant about the racially offensive book display; being "singled out" and disciplined for watching President Obama's inauguration;[11] or the racially offensive calendar entry allegedly left on the Plaintiff's desk.[12] There is similarly no evidence that her superiors already knew about these incidents or indication that they should have known or that there was

---

[11]The relevance of this piece of evidence to a claim of a hostile work environment based on race is questionable. The Plaintiff implies that she was "singled out" because of her race; however, this claim of race discrimination is contradicted by the Plaintiff's own statement that she watched the inauguration with five individuals, one of whom was an African-American male, Dr. Roland Chamblee. (*See* T. Graves Aff. ¶ 22.)

[12]The Court also notes that the Plaintiff does not attempt to identify who was responsible for the racially offensive book display or where it was actually displayed. With respect to both the book display and the calendar entry, the Plaintiff has made no attempt to authenticate either exhibit.

no complaint procedure in place for her to utilize. Her failure to complain about these incidents meant that the Defendant was not aware that it needed to take some action concerning these types of incidents.

The Plaintiff's allegations that Nelson and other unidentified supervisors harassed her constantly and scrutinized her conduct on a daily basis do not support a claim of a racially hostile work environment. First, the Plaintiff makes no effort to explain how these general allegations relate to the issue of race. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005) ("the alleged harassment must be 'sufficiently connected to race' before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race."). The Plaintiff may have been subjected to unwanted disciplinary scrutiny, but there is no evidence that there was any accompanying racial animus. Second, disciplinary scrutiny is not a sufficient factual basis to support a claim of a hostile work environment. *See Glebocki v. City of Chi.*, 32 F. App'x 149, 154 (7th Cir. 2002) (finding that the supervisor's conduct—which allegedly included closely scrutinizing the plaintiff's behavior; initiating numerous disciplinary investigations against the plaintiff; and recommending unusually harsh discipline against the plaintiff—may have "inconvenienc[ed]" the plaintiff but "did not create an objectively hostile work environment.").

In light of the foregoing analysis, the Court grants the Defendant's Motion for Summary Judgment on the racially hostile work environment claim.

**C.     Age Discrimination**

The Plaintiff alleges that the Defendant discriminated against her in their decision not to hire her for the position of Lead Staff Member and in its decision to terminate her position of employment on the basis of her age.

**1.** ***Failure to Hire***

a.     *Facts Relevant to Failure to Hire Claim*

The Defendant challenges the Plaintiff's claim of age discrimination in hiring, arguing first that the Plaintiff has presented no direct evidence demonstrating that the Defendant's decision to hire Wright instead of the Plaintiff was based on age; second, that the Plaintiff has not produced any circumstantial evidence that would point directly the hiring decision being a product of age discrimination; and third, the Plaintiff is not able to establish a prima facie case of discrimination under the indirect method of proof (Def.'s Mem. in Supp. of Summ. J. 13-14.)

In support of its position, Defendant emphasizes that Wright was hired because she was the more qualified candidate for the position of Lead Staff Member. The Plaintiff does not directly respond to the Defendant's arguments.  The Plaintiff briefly mentions age as an issue on two occasions in her affidavit. According to the Plaintiff, Wright, who was hired for the position that the Plaintiff applied for, was a "younger female Caucasian." (T. Graves Aff. ¶ 8.) The Plaintiff later states that "I have knowledge that Mr. Nelson refused to call me back after layoff and hired a younger Black female in a similar position when it became available to cover the

pretext of discrimination." (*Id.* ¶ 17.) Citing Exhibits 12[13] and 65,[14] the Plaintiff reiterates the

same claim in her Amended Response in Opposition to the Plaintiff's Motion for Summary

Judgment. (*See* Pl.'s Am. Mem. in Supp. 10.)

b.      *Analysis*

The Plaintiff asserts that the Defendant did not hire her for the position of Lead Staff

Member on account of her age.[15]  The ADEA makes it unlawful "to fail or refuse to hire or to

discharge any individual or otherwise discriminate against any individual . . . because of such

individual's age." 29 U.S.C. § 623(a)(1). This prohibition applies to individuals who are at least

forty years of age. 29 U.S.C. § 631(a). To prevail under the ADEA, a plaintiff must show that age

was the "but-for" cause of a defendant's failure to hire him. *Gross v. FBL Fin. Servs.,* 557 U.S.

167 (2009).

"A plaintiff can establish age discrimination through direct evidence, or more commonly

through the burden shifting method of *McDonnell Douglas Corp. v. Green,* 311 U.S. 792

(1973)." *Beatty v. Wood,* 2004 F.3d 713, 716 (7th Cir. 2000). Here, the Plaintiff has not offered

any direct evidence of age discrimination on the part of the Defendant. Therefore, the Court

---

[13]Exhibit 12 is a "Summary of Accreditation and Certification Requirements" from the Michigan Department of Community Health. (Pl.'s Ex. 12, ECF No. 45-5 at 3.) It is unclear to the Court how this Exhibit is relevant to the Plaintiff's claim of age discrimination.

[14]Exhibit 65 is a list of individuals allegedly produced in discovery that were hired or promoted by Nelson. (Pl.'s Ex. 65, ECF No. 45-10 at 5.) Exhibit 65 does not identify the age of any of the employees hired or promoted by Nelson. Therefore, its relevance to the Plaintiff's claim of age discrimination is unclear to the Court.

[15] The same analytical framework is applied to employment discrimination cases whether they are brought under the ADEA or Title VII. *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1061 n. 4 (7th Cir. 2003).

analyzes the Plaintiff's claim under the indirect burden-shifting approach. "Under that approach, [plaintiff] must first demonstrate a prima facie case of discrimination by a preponderance of the evidence." *Beatty,* 204 F.3d at 717. That is, plaintiff must show that (1) he was a member of the protected group; (2) he sought a position for which he was qualified; (3) he was not hired; and (4) a substantially younger person who was similarly situated was hired. *Zaccagnini v. Charles Levy Circ. Co.,* 338 F.3d 672, 675 (7th Cir. 2003); *Sembos v. Phillips Components,* 376 F.3d 696, 700 (7th Cir. 2004). If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to offer legitimate non-discriminatory reasons for the challenged employment action, and if the employer contends its action was motivated by a reason other than age, the burden then shifts to the plaintiff to prove that the asserted reason was a pretext for discrimination. *Adreane v. First Colonial Bankshares Corp.,* 154 F.3d 389, 393 (7th Cir. 1998).

Neither party disputes that the Plaintiff satisfies the first three elements required to establish a prima facie case of age discrimination. However, the Plaintiff fails to satisfy the fourth requirement because she has not presented any evidence that a substantially younger person who was similarly situated was hired. First, based on the evidence in the record, it is unclear how old Wright was at the time she was hired for the position of Lead Staff Member. The only evidence in the record regarding Wright's age is the Plaintiff's statement that Wright was "younger" than the Plaintiff was at the time the Defendant hired Wright. The Plaintiff does not present any evidence of Wright's exact age. Without more evidence, a jury would be unable to conclude that Wright was "substantially younger" than the Plaintiff at the time of Wright's hiring. More importantly, the Plaintiff has offered no argument and presented no evidence that she and Wright were "similarly situated." A showing of substantial similarity entails that the two

employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Antonetti v. Abbott Labs*, 563 F.2d 587, 592 (7th Cir. 2009); *Radue*, 219 F.3d at 617. The Defendant has presented unrebutted evidence that (1) Wright had a scientific degree and the Plaintiff did not and (2) Wright had a broad experience with the Defendant's Lead program whereas the Plaintiff worked almost exclusively in community outreach.[16] The Plaintiff has presented no evidence concerning the identity of Wright's supervisor, the standards to which Wright was subject, and the circumstances of Wright's position compared to that of the Plaintiff. In light of the evidentiary record, a reasonable jury could not conclude that Wright was a substantially younger individual who was "similarly situated" to the Plaintiff. Consequently, the Court will grant summary judgment on the Defendant's Motion for Summary Judgment on the Plaintiff's claim of age discrimination in hiring Wright for the position of Lead Staff Member.

**2.**     ***Termination***

a.     *Facts Relevant to Discriminatory Discharge Claim*

The Defendant challenges the Plaintiff's claim that the Defendant discriminated against the Plaintiff on the basis of age in its decision to terminate her position. The Plaintiff states that "I have knowledge that Mr. Nelson refused to call me back after layoff and hired a younger Black female in a similar position when it became available to cover the pretext of discrimination." (T. Graves Aff. ¶ 17.) Citing Exhibits 12 and 65, the Plaintiff reiterates the same claim in her

---

[16] This evidence is a legitimate, non-discriminatory reason for which the Plaintiff has not presented evidence of pretext.

Amended Response in Opposition to the Plaintiff's Motion for Summary Judgment. (*See* Pl.'s Am. Mem. in Supp. 10.)

b.    *Analysis*

The Plaintiff challenges her discharge by the Defendant, arguing that her employment was terminated on account of her age in violation of the ADEA. A plaintiff may show discriminatory discharge by the direct method or the indirect method. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733 (7th Cir. 2011). Again, the Plaintiff has identified no direct evidence of discrimination on the basis of age. Therefore, the Court evaluates the Plaintiff's claim under the indirect method of proof. Under the indirect method of proof, a plaintiff can demonstrate a prima facie case by demonstrating that (1) she was in the protected age group (40 years of age or older, pursuant to 29 U.SC. § 631(a)), (2) she was performing his job satisfactorily, (3) she suffered an adverse employment action, (4) she was replaced by a similarly situated individual outside the protected class. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003).

The Plaintiff's claim here fails. First, the Defendant's age at the time of her hiring by the Defendant weighs against a finding of discrimination on the basis of age. The Plaintiff was 54 years old at the time of her discharge in October 30, 2009. At the time of her hiring on April 16, 2007, the Plaintiff was 51 or 52 years old—11 or 12 years into the protected class. This fact does not foreclose a finding of discrimination but does create an inference of nondiscrimination. *See Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000) ("Ritter was hired originally at the age of 63 and was rehired at the age of 65. From the fact that HND hired Ritter

when he was already 23 years into the protected class, the court can infer that his later firing was not due to his age."); *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1147 (7th Cir.1994) ("It seems rather suspect to claim that the company that hired [plaintiff] at age 47 'had suddenly developed an aversion to older people' two years later."). Second, the Plaintiff has not offered evidence establishing that she was replaced by an individual younger than 40 years old, or if within the protected class, substantially younger than the plaintiff.. The Plaintiff asserts that she was replaced by a "younger Black female" but introduces no evidence of her age. Therefore, a jury would be unable to determine if the Plaintiff satisfied the fourth element required under the indirect method of proof. Finally, the Plaintiff has not presented any evidence that she was replaced by a similarly situated individual. The Defendant insists that the Plaintiff's employment was terminated in October 2009 because of the loss of a HUD grant that funded the Plaintiff's position as Lead Outreach Coordinator. In February 2010, the Defendant received a CDC Lead Grant and posted a job opening for the position of "Environmental Health Specialist." (Pl.'s Ex. 60, ECF No. 45-8 at 10.) According to the Plaintiff, a "younger" individual was hired to fill this position. The Court notes that the Plaintiff simply makes no effort to demonstrate that she and the "younger" individual who was hired for the position of Environmental Health Specialist were similarly situated. The Plaintiff has not presented any evidence concerning her replacement's qualifications or work experience. The only information in the record concerning the Plaintiff's replacement is a discussion of her relative age and race. This lack of evidence prevents a meaningful comparison of the Plaintiff and her replacement. In light of the limited record and the foregoing analysis, a reasonable jury could not find that the Plaintiff was replaced by a similarly situated individual. Therefore, the Court grants summary judgment for the Defendant on the

claim of age discrimination in its decision to terminate the Plaintiff's employment.

**D.    Retaliation**

**1.    *Facts Relevant to Retaliation Claim***

The Defendant challenges the Plaintiff's retaliation claim, arguing that the Plaintiff has presented no evidence that she suffered a materially adverse employment action. (Def.'s Mem. in Supp. of Summ. J. 16-17.) According to the Defendant, the Plaintiff's claim that she was subject to increased scrutiny, unwarranted reprimands, and general harassment does not rise to the level of a materially adverse employment action. The Plaintiff does not directly respond to the Defendant's arguments but cites a number of incidents that she believes establish a claim of retaliation. In the Plaintiff's view, agents of the Defendant began to retaliate against her following the filing of her first formal grievance with the Defendant's Personnel Committee in October 2008. (Pl.'s Am. Mem. in Supp. 2.) According to the Plaintiff, after she filed her complaint, her supervisors "retaliated against her by limiting her contact with co-workers, and attempting to color her as a 'loud, caustic, rude, and stereotyped' individual." (*Id.* 6.) Agents of the Defendant allegedly scrutinized her performance and cancelled her outreach activities. The Plaintiff states that she suffered "retaliatory treatment" for one and a half years despite positive evaluations and the success of her outreach activities. In one instance, the Plaintiff reports that Mauller, the Environmental Health Assistant Director, retaliated against her after she informed the Board about Mauller's intimate relationship wtih Molchan. (T. Graves Aff. ¶ 13.) According to the Plaintiff, this retaliation took the form of Mauller singling the Plaintiff out for watching President Obama's inauguration during work. (*Id.*)

**2.    *Analysis***

The Plaintiff asserts that the Defendant and its employees retaliated against her for filing a grievance alleging race and age discrimination with the Defendant's personnel committee and later a St. Joseph County Commissioner. Title VII prohibits an employer from discriminating against an employee who "opposed any practice" prohibited by Title VII or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e–3(a). Title VII's "antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (citation omitted) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346 (1997)). An employee may establish retaliation by proceeding under either the direct or indirect method of proof. *Roney v. Ill. Dep't of Transp.,* 474 F.3d 455, 459 (7th Cir. 2007).

a.      *Direct Method of Proof*

Although the Plaintiff's pleadings are not a model of clarity, the Court understands the Plaintiff to argue that the Defendant retaliated against her during the course of her employment *and* by its decision to terminate her employment. Under the direct method of proof, a plaintiff raising a retaliation claim must produce evidence from which a reasonable jury could conclude: (1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two. *Benuzzi v. Bd. of Educ. of City of Chi.,* 647 F.3d 652, 664 (7th Cir. 2011). Under this method, "a plaintiff may offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected

group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 792 (7th Cir. 2007).

The Plaintiff argues generally that, after she filed a formal complaint alleging race and age discrimination with the Defendant's personnel committee, her supervisors overzealously scrutinized her work performance, regularly disciplined her without cause, and interfered with her outreach activities. In response, the Defendant contends that these alleged actions on the part of the Plaintiff's supervisors do not rise to the level of being "materially adverse." The Defendant's argument ignores the fact that, when read as a whole, the Plaintiff's pleadings appear to allege that her termination was at least, in part, retaliation for the filing of a formal complaint of age and race discrimination with the Defendant's Personnel Committee. Termination is clearly a materially adverse action. *See Arizanovska v. Wal–Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012). Further, when viewed in combination with her termination, increased scrutiny, unwarranted discipline, and general harassment could be considered retaliation. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 n. 7 (7th Cir. 1996) (a "plaintiff might have a cognizable claim of retaliation based on acts which, although seemingly appropriate and nondiscriminatory when considered in isolation, bespeak retaliation when considered together").

In the instant case, the ultimate question is whether the Plaintiff has offered sufficient evidence to establish a causal link between the protected activity and the materially adverse actions in question. The Court finds that the Plaintiff has failed to meet her burden. In her pleadings, beyond conclusory assertions, the Plaintiff makes no argument of a causal link between her filing of a formal complaint with the Defendant's Personnel Committee and the

retaliatory in question. The record indicates that the Plaintiff filed a complaint alleging race and age discrimination in October 2008 with the Defendant's personnel committee. In the months following her filing of the complaint, the Plaintiff alleges that she her supervisors scrutinized her work, disciplined her without cause, and generally impeded the performance of her job responsibilities. However, the Plaintiff does not identify, and the Court has not found, any circumstantial evidence indicating that these acts were in retaliation for the filing of her complaint. The record does not contain any evidence that the Plaintiff's supervisors made direct or implied threats to the Plaintiff, demanding that she withdraw her complaint or expressing their anger towards her for filing a complaint. Nor does the record contain evidence demonstrating a causal link between the Plaintiff filing her complaint and the subsequent discipline and scrutiny to which she was subjected. Rather, the record indicates that the Plaintiff's supervisors and the Defendant's managers cooperated in the review of the Plaintiff's complaint and testified before the Defendant's personnel committee and a St. Joseph County Commissioner, following which both the personnel committee and St. Joseph County Commissioner found that the Plaintiff had not been discriminated against on the basis of her age or race.

The only evidence of any causal link between the filing of the Plaintiff's complaint and the alleged retaliatory acts is the interval of time between the two. But, as the Seventh Circuit has repeatedly made clear, temporal proximity alone is not sufficient to establish a "convincing mosaic" supporting an inference of retaliation. *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (noting that suspicious timing alone will not establish a causal connection); *Burks v. Wis. Dept. of Transp.*, 464 F.3d 758–59 (7th Cir. 2006) ("[S]uspicious timing alone . . . does not support a reasonable inference of retaliation" and "[t]he mere fact that one event preceded another does

nothing to prove that the first event caused the second.") (internal citation and quotation marks omitted).

To the extent that she argues her termination was in retaliation in response to her filing of her complaint, the Plaintiff's argument fails for similar reasons. The Plaintiff identifies no circumstantial evidence of a causal link between her filing of the complaint and her termination. The complaint was filed in October 2008 and the Plaintiff's employment with the Defendant was terminated on October 30, 2009, one year later. The one-year interval of time between the filing of the complaint and the Plaintiff's termination is not suspicious because "[a] substantial time lapse between the protected activity and the adverse employment action 'is counter-evidence of any causal connection.' " *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four month delay between the plaintiff's filing of EEOC charges and his termination defeats retaliation claims); *see also Jean v. Walgreen Co.*, 887 F. Supp. 1007, 1013 (N.D. Ill. 1994) (finding nine-month gap insufficient to show intentional retaliation where plaintiff relied solely on suspicious timing).

b.   *Indirect Method of Proof*

The Plaintiff's claim of retaliation fails under the indirect method of proof as well. "Under the indirect method, the plaintiff must show that (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). Here, the Plaintiff has failed to present sufficient evidence that she was treated less favorably

than similarly situated employees. The Plaintiff has generally averred that white employees

received better treatment than she did. However, the Plaintiff has not identified any *similarly*

*situated* employee to whom she should be compared; without an identifiable comparator and

without evidence of that comparator's supervisor, job responsibilities, and work performance, a

jury would be unable to find that the Plaintiff has established a prima facie case of discrimination

under the indirect method of proof. Therefore, the Court will grant summary judgment in the

Defendant's favor on the claim of retaliation.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's Motion for Summary

Judgment [ECF No. 37]. The Plaintiff's claim of sexual harassment is dismissed without

prejudice for failure to exhaust her administrative remedies. The Defendant's First Motion to

Strike [ECF No. 46] is GRANTED IN PART, DENIED IN PART and DENIED IN PART AS

MOOT. Finally, the Defendant's Second Motion to Strike [ECF No. 50] is DENIED AS MOOT.

SO ORDERED on September 17, 2012.

 s/ Theresa L. Springmann
THERESA SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION